We have these cases one after the other. Jails all over Texas, all over Dallas, all over Texas. People die right in there. I'm going to add a chair and a piece of shit. It's unbelievable. I mean, I have a woman who is extremely wealthy, who is very sick, winds up in the jail, and dies from the same kind of thing that killed these people. And it's all over the state. And I don't know whether it's federal government, state government, or local government. That was your question. Oh yeah. And it's a lack of money, among other things. And who knows what kind of talent they have left. Thank you, Counsel. It's really bad. So let's see. I'll call it again if I didn't. 25-109-79. I did Dawes v. Dallas and Ms. White. Good morning. May it please the Court. My name is Shelby White, and along with my co-counsel, Ms. Katie Wamble, we represent the appellants in this case, Ms. Mary Dawes and Alfred Saucedo. First, I want to talk about the two main issues that we're looking at. One, did the officers use excessive force when they shot Ms. Dawes 13 times, shot at Ms. Dawes 13 times? And second, when we're evaluating the Monell claim against the city of Dallas, what role does this Court's earlier holding that the law on an officer's use of force was not clearly established, what role does that play? So to give you all some background, I know none of you all were on the panel for Dawes 1. But in that case, we went up on qualified immunity for the officers. And the issue that this Court ended up holding was we don't need to look at the constitutionality of whether the shooting was unconstitutional because we think the law is not clearly established. So then we went back down to the district court who made first a holding that he still believed the shooting was not, that there was no constitutional issue with the shooting, and therefore, if there's no constitutional issue, there's no Monell liability. In the alternative, he said under Bustillos, we can't have a Monell failure to train claim if the law is not clearly established. So when this Court held that the law was not clearly established, that eliminated the Monell claim in the alternative. So that would be conclusive. So maybe start with that. Yes. So first of all, I don't think Bustillos is the preeminent holding from this Court on that issue. Is it binding on our panel, though? It's not binding on this panel because there is both earlier and later cases that say differently. In the 1983 failure to train Monell context? Yes. So Brown v. Linford is not in the failure to train context. But Judge King, you were on that panel at the time from 2001. But I'm just going to interrupt. Just what's your best failure to claim case that premises notice for municipal deliberate indifference on a pattern instead of a clearly established right? Yes. That's Wisner v. Kaufman County. That is this Court, 2019, with Judges Dennis, Clement, and Graves. Graves also was on the panel for Bustillos and wrote the opinion in Bustillos. So he is on both panels saying what is essentially different things. And I think the reason that that is the case is because Bustillos is in a very unique posture. It involves a hospital district being sued for medical professionals that performed an invasive cavity search. And the constitutional question was, was it at the direction of the Border Patrol agents or did they do it without the Border Patrol agents telling them to do these invasive cavity searches? And the court said the constitutional issue, if the Border Patrol agents had directed them to do it, there is no constitutional violation. Hospital staff should follow what Border Patrol agents tell them to do. But if they did it undirected, there might be a constitutional issue. But in any event... Remembering Bustillos, I thought the court held in a pattern case, quote, the policymaker cannot show deliberate interference to a constitutional right not clearly established. Yes. And I'm sorry, I'm getting to that part. Going through the factual background. The court then said, in any event, for this hospital staff, the law is not clearly established. We do not have any cases from the Fifth Circuit talking about what hospital staff should do in these sort of body cavity search issues. The only case that we have that exists anywhere we can find is from the Ninth Circuit from the 60s. And that actually involved a much more invasive body cavity search that was much more aggressive. And so then you looked at the actual pleading itself. I think there are some deficiencies in that pleading. The court says, you didn't really plead your constitutional case very clearly for us to begin with. And you didn't plead your Monnell claim very clearly for us to begin with. And so the fact that the court comes down and says, the fact that there is no obligation for the hospital to train its staff on this sort of issue, it makes sense that if the law is not clearly established on body cavity searches by hospital staff, then the hospital would not necessarily have an obligation to train them on that. We are talking about training for officers using deadly weapons, using guns. That is a very well-established precedent that officers need to be trained on that. And there are a multitude of ways that we can establish pattern and practice in a shooting case, even if that individual shooting that is at issue doesn't have clearly established law. So I might not have said that very well, but we could establish a series of cases where other officers shot at people, and those cases are relevant to our pattern and practice to establish Monnell liability, even though our particular shooting was factually different enough that it wasn't clearly established law. Well, some other circuits would agree with you on that point, right? Yes. So the circuit split is actually, circuits holding that clearly established law does not apply to Monnell. That is Atkinson v. Godfrey, 4th Circuit from 2024. That is also a failure to train claim. Horton v. Horton v. City of Santa Maria. That is the 9th Circuit from 2019, also a failure to train claim. Quintana v. Santa Fe County Board of Commissioners. That is the 10th Circuit from 2020. That was a deficient medical intake policy and delivered indifference, still the delivered indifference analysis. And then Sanders v. Sheriff of Brevard County. That is the 11th Circuit, 2018, talking about jail conditions. And then we also have, interestingly, Joanna Schwartz's Yale Law Review article, talking about this backdoor municipal liability. And she goes into a pretty in-depth and lengthy discussion that would probably be helpful to this court about how these training policies are implemented to begin with and why that backdoor municipal immunity is not the right resolution to that. So this Bustillos' 2018, are there circuit decisions after Bustillos' from other circuits that acknowledge Bustillos' sort of goes a different direction? Yes, and I do not have the site in front of me. There's an Eastern District of Pennsylvania case that goes, actually breaks down all the different ways that the different courts have decided. And then also the Law Review article breaks down the different cases.  The courts that have said that clearly established law does apply to Mon-El are Arrington Bay v. City of Bedford Heights. That's the 6th Circuit from 2017. That's the most recent one. And then Higgins v. Franklin County Sheriff's Office, 6th Circuit, 2012. Joyce v. Town of Tewksbury, Massachusetts, 1st Circuit, 1997. And then Spalza, I'm not saying that right, versus City of Brooklyn Park, Minnesota, and that's the 8th Circuit from 2007. And I don't know that all of these are cited in this brief, so I'm happy to provide a 28-J briefing listing those out. But how many, cite either, is Windsor or any of the circuit decisions, are those single incident cases or are those pattern cases? I'm sorry, I may not understand your question. In other words, your argument here is that a pattern can give sufficient... Yes. Suffice for a Mon-El liability. Are any of those cases pattern cases? In other words, it makes sense that a city wouldn't be on notice without clearly established law in a single incident case. Yes. But what's the case that says that? I believe that some of those are pattern in practice, but I don't have that at the tip of my fingers right now. Okay. But I do know that we are looking at a series of cases where the failure to train claim comes in and failure to train most frequently is established by pattern in practice. So when I'm listing these cases that have failure to train as the Mon-El claim, my understanding is at least some of those would have to be requiring an establishment of pattern in practice because there's a very rare instance where a single incident ends up with a failure to train claim. So your tightest answer as to how Mon-El... I mean, Bustillos doesn't seem to control this public decision, is what? Bustillos is wrong. Bustillos is distinguishable. There's a split. Bustillos is distinguishable and that there is a more recent case that holds differently from this circuit. So Windsor in particular also is a failure to train claim. And I'll get to my notes on Windsor real quick. I thought that was just there's no constitutional violation underlying it. That's what I thought about Windsor. But I'm not remembering. That's the bicycle. Yes. The first suspect flees in a bicycle. He's wearing a brown shirt. They lose sight of him. And they see someone on a bicycle in a blue shirt. They end up attacking and shooting that guy. He ends up ultimately dying from that. But they said the law is not clearly established in terms of what the officer should have done when they found, you know, second suspect in the blue shirt fleeing on the bike. That the law was not clearly established that what they did was wrong. But the court does say we're not deciding whether it's a constitutional violation or not. And then they said, because we haven't decided on the constitutional violation, the Monnell claim is it's not appropriate to dismiss the Monnell claim. It needs to be remanded back to the district court for review. OK. And so, I mean, the direct quote is, because we determined there are genuine issues of fact as to whether there was a constitutional violation, we reversed the district court's grant of summary judgment to the county as premature and remanded the district court for reconsideration. Basically saying, you need to look at whether there's a constitutional violation at issue because that is what directs your Monnell claim. And I think if we'll kind of backtrack a little bit, I know we've talked about the recent case law, but I'd like to talk about Owen a little bit as well. Because Owen is our seminal US Supreme Court case talking about why we have 1983 cases, why municipal liability exists. But distilled down, your theory is there are cases out there where a municipality can be deliberately different. In spite of no clearly established right, there's no clearly established law, just by virtue of a pattern. Yes. OK. And just one case from any other circuit that says that. Just one. Not, you've got a bunch. What's the ones that's the clearest for that exact proposition? Just one. I mean, I would think, I would say that Atkinson v. Godfrey in the Fourth Circuit, because it's also failure to train, and Horton v. City of Santa Maria from the Ninth Circuit, because they were both failure to train claims. And those are pattern cases. I believe so, but don't. Well, that's going to be really important. Yes. I think I want to, I don't want to misrepresent to the court, so I would like to provide additional briefing and be confident on that. No, OK. We can check. OK. That's my understanding. I mean, I agree with you that it would stand to reason they're probably pattern cases because it's much, it's hard to prove. And it might be, too, that it wasn't discussed explicitly that that was not the breakdown of the analysis. But certainly, there are a lot of cases talking about, the cases that look at this issue in particular, actually refer back to Owen and talk about what we look at for municipal liability is different than what we look at for qualified immunity. And in the context of municipal liability, we do not care about clearly established law because we care about deliberate indifference shown through pattern and practice. And that is our analysis, and that's a different analysis than QI's clearly established law. And the reason for that is that. Otherwise, there'd be no reason for the panel to have remitted here, right? Yes, exactly. Although Bustillos didn't come up, according to the district court, you brought it up. Yes, we brought Bustillos up in our own briefing. And he complimented you? Yes. Saying you acknowledge. Someone else in my office wrote that. Therefore, he's saying thank you, but this is conclusive. Yes. And in our briefing, we distinguished Bustillos kind of on the same basis I'm talking about here as well. And he also, his Bustillos holding was in the alternative. So he said, to begin with, there is a constitutional, there is no constitutional violation. But when we look at Owen, and when we think about why qualified immunity exists compared to why municipal liability exists, Owen says municipal liability is strict liability, that we don't really care about. Well, let me backtrack that. When we think about municipal liability, the purpose of it is that we have given these municipalities time and kind of the official duty to look at policies and examine the pros and cons of those policies and make decisions that will have consequences. And the pattern that you alleged here that should have put the city on notice was less that they didn't flip on the emergency lights, and it was much more understanding when deadly force can be used in a moving car situation, correct? Yes. And is the specific deficiency in the training that they allowed officers to shoot when they subjectively believed they were in danger as distinct from an objective? Is that it? I mean, I think there's more to it. But that's the crux, right? Yes, that's the crux of it. And I think you need to keep in mind, too, that the city's summary judgment was not a evidentiary response type of summary judgment. They just said, hey, if you found there's no constitutional violation under this qualified immunity analysis, there is no monetary liability for us. But the original panel, majority and dissent, in nice dialogue, they're really focusing on what I think would have been the relevant appropriate case liable. Yes. OK. And then there was some discussion about Baker, which recently came back up. You're familiar with that?  OK. But Baker, alternately, all that was violative was running after a car and shooting somebody dead. Here, as Judge Oldham points out, for the majority, it was nighttime. They know it's a stolen vehicle. They're approaching. Commands are ignored. And instead, the car bags up. That's a lot different. That seems more objectively reasonable to shoot than running after a car and shooting someone dead. I would disagree with your analysis that it's more reasonable. I think the facts that we have here are, when you look at it from a kind of theoretical, I'm sorry, my answer is probably going to take longer than my 30 seconds. That's fine. I asked one question. When you look at the theoretical risk, this is kind of how the city is positive. We've got a potential stolen car. So one of the risks is they're going out on a public road and they're going to run away and put citizens at risk. Second, that they're endangering police officers during this chase. Or third, that they're going to use the car as a deadly weapon. Those are the theoretical risks. But when we look at the actual facts of this case, when we look at the actual risks, this car's going three miles per hour, which is less than walking speed. And I think that's also indicative of no intent to harm anyone, that this person is not ramming their car into people at high speeds or trying to use aggressive maneuvers to get out. If you actually watch the video, it's very slow. She kind of bumps into the police car and then pulls forward, kind of hits the fence, stops again, and pulls back going very slowly. So everyone can see where she is and can see the speed that she is moving at and has plenty of time to move out of the way. Second, she's, again, she's making slow attempts to move out of the parking space, which is not evidence of an intent to flee or engage the officers in a chase. No one's behind the car or otherwise in the path of the vehicle. We have video evidence of that. None of the officers are at risk. The exits are blocked, so she cannot actually effectively flee. She's not going to be able to get out on the road and engage in a chase. Okay, wrap it up a little bit. And I asked questions, but go ahead. And then I think, also, there's no recent crime. I know that they posit this as a stolen vehicle case. The vehicle was reported stolen a month ago, and that's not what the call was about. The call was about a suspicious vehicle in the parking lot basically saying, someone who doesn't live here is parked in our apartment parking complex. And so when the officers are coming here, they're not, it's not a car that was stolen moments ago that they're chasing down. This is a car that's been reported stolen a month ago and is sitting in a parking lot. And so I think that's a very different actual factual analysis than the theoretical risk that's posed. Thank you, counsel. You have rebuttal time?  Mr., is it Ligon? Ligon? Ligon. Ligon, yep. Good morning. I'm Travis Ligon, and I represent the city in this matter. May it please the court. I'd like to save some time at the end to talk about the Fourth Amendment violation issue. But I'd like to jump right in on Bastios. Bastios is good law, and its holding was not cabined to a very narrow set of facts. Its holding was actually quite broad, so much so that the holding has been applied elsewhere, not just in our case. In the appellant's brief, they stated that they could not find, quote, locate any district court applying Bastios in the manner in which the district court claimed it should be applied. I found five. Which you put in your brief? We, this is in their reply brief, which they said they could not find any. And so I went and checked, and there are actually five. I can give those to the court. But they're all related from... Well, what about, she cited as her strongest rebutting authority the Fourth Circuit Atkins decision. There is a circuit split on this issue. However, this court's opinion in Bastios relied upon other circuits. What's precisely the circuit split? The Sixth, Eighth, Us, I think there's maybe one or two more. The backdoor liability article that we cited in our brief has a breakdown of that. No, I mean, what's precisely the issue?  I think the proposition is they, our circuit and others like it, have a blanket proposition that deliberate indifference is negated by lack of clearly established law. And I think that there is room in the joints in different ways in those other circuits. Whereas here, there is no room in the joints. But don't those other circuits say it's negated in a single incident? If the municipality, if it had never happened before, the only way they're going to get notice is if there's clearly established law. Do any of the cases you just said, Sixth and Eighth, say it in a pattern case? Even a pattern of police officer misconduct can't suffice without clearly established law. That's the question. And I agree that Bastios seems to state that. But then why would they have remanded at all? Why would the prior panel have remanded? So, that's a great question. The prior panel did not have this issue in front of them. Okay, so your position is they just overlooked what was conclusive. There wouldn't have been a remand. My understanding was that neither party had asked for it. Okay, so that's your argument. Back to the questions. You've stated the proposition. Can a municipality ever have, be deliberately indifferent based on a pattern as opposed to a police? And you are telling us there are district courts that have followed Bastios for that exact proposition. I believe so. In pattern cases, not single incident cases. I believe that the Weaver v. Stroman case, Weaver, Walker, Roten, Eaton, Turley or B. Stroman in the Western District of Texas followed that. And they followed it with this quote. And each one of those is a footnote. Thus, if the Fifth Circuit finds the defendant is entitled to qualified immunity by either establishing there are no facts to show a constitutional violation or that the law was not clearly established at the time of the misconduct, the municipality claim against the city fails. And so I think that other courts have applied it in the way that we are seeking to ask this court to continue to apply it. Also, given the fact that when qualified immunity concerns clearly established law, deliberate indifference and clearly established are, in effect, cousins. They concern knowledge. They're both questions about... I understand. It's just let's get down to the logic of the proposition. So the prior panel, of course, said if the officers didn't have clearly established law, they get QI. But then the prior panel says it's a different story from Monell. It comes down. And now what you're saying is the fact that there wasn't clearly established law means that the city, as a matter of law, couldn't have been deliberately indifferent to something. Even if there was a pattern of events that had informed them of it. That's your logic, right? And you say Bustillos says that. And I agree. It does seem to say that. But what are the cases that it relied on to construct that proposition? Weren't they both single incident cases? What? Well, you probably know them better than I do. Hagen's out of the six, which was quoting the Eighth Circuit Zabala case? I'm sorry, Your Honor. I don't have that. But do you know it? What was the authority for Bustillos to say that? It was relying on those two circuits. And if those two cases are single incidents, just help me out logically. Why would the rule make sense? The rule makes sense because when a deliberate indifference requires not just a pattern of bad acts, deliberate indifference requires substantial similarity. So routinely, complaints are dismissed because they allege bad acts. The complaint in this case alleged bad acts. It did not allege circumstances, a pattern that are substantially similar to this. Well, I thought whether they're right or wrong, and the prior panel has said a lot about it, and you've made strong arguments, but I thought their argument is a pretty simple one, that the manuals that are given in the Dallas Police Department tell police officers you can use deadly force against motorists just if you think you're facing imminent bodily harm, whereas the law is that it has to be objectively reasonable. So you can't think someone might have been behind the car and shoot the mother dead. You've got to actually know that someone's still behind the car, especially a car where they might have been startled awake, two parents, homeless, and backed out very slowly, thinking, oh, I guess we've got to get out of this parking lot, instead of flight risk police officers. As far as what the city rules are, under this court's precedent, those are not policies. Those are just internal rules. The policymaker for the city of Dallas is the city council. It's not the Dallas Police Department chief. This court has been, since 2008, a case called Grodin, has made clear that the Dallas Police Department chief is an executive, not a policymaker. But the district court didn't rule on that basis. Correct. So the district court found that Bustillo's plain language indicated that without deliberate indifference related to the substantially similar issue here. Factually, though, I think if you actually go back and watch the video, there were multiple commands for them to put up their hands. There were multiple commands for them to stop. Ms. Dawes backed up into a police car. She backed forward into a fence such that the tree shook, and then she kept moving back again. There has been discovery in this case. The officers were deposed, and so the facts that the officer, principally who fired, believe, reasonably believe, that an officer had been there just a few seconds before, this court has already determined those facts.  But Kimball was found to have been untruthful about that. So the fact that these officers later subsequently got in trouble for violating internal city policies is a black mark on them. I know for sure exactly that Hess was fired. I thought it was specific to his credibility about other people being in danger. I thought that Kimball was found not to have been credible. Am I wrong about that? I think there were some allegations of that. I can't state for sure. I know that under the record that this court has already determined under Dawes 1, the facts were that Hess, who fired multiple shots, only found out later that the officers had moved. I don't believe in those issues, to the extent that there were fact issues, those should have been brought up before in the qualified immunity context. That's a fine argument. You're right. It's there. But there were two rounds. Remember, the magistrate had said, at least the last four shots, there's no threat at all. Remember that? And that is how Coburn plays out. Judge Smith dissented in Lytle originally. Judge Smith writes Coburn 2, that you have to look at each set of shots. So maybe there was a legitimate fear as to the first set, but the magistrate points out the last four. Correct? Do you understand what I'm asking about? Correct. And then the district judge looked at that and rejected it. So if you actually watch the video, the first set of shots happens. The car stops. The shooting stops. The car starts backing up again. And the shooting starts back up. So in a span of about three seconds, this whole relevant fact pattern formed. And based on the discovery that was done and on the body cam that was available, the facts of this case, which have already been decided, were that the officers who fired reasonably believed that someone was still behind the car when it backed up. Subjectively. So that's a great point. There's a question between what is subjective, meaning what I feel, versus objective, meaning what I know. Or what the video shows. What the video shows. So if I feel that you are kind of making me feel unsafe, that doesn't mean anything. If you exhibit signs of aggression, that's different. So it's what the officers knew at the time, not how they felt. And based on the evidence that's before this court, those who fired had a reasonable basis to believe that the officers or officer who had been behind the car two, three seconds earlier in the very dark parking lot, as this thing is moving on quite quickly. And if you look in the testimony of Officer Vest. When you say quite quickly, you're not disputing two to three miles an hour walking speed, right? Oh, the speed of the car backing up was slow. We don't dispute that. The problem is that, just like this court has said in another context, when an officer, the Fourth Amendment does not require officers to wait until a suspect shoots to confirm that a serious threat exists, nor must a police officer allow an individual to aim his weapon before applying deadly force to ensure their safety. The car had been moving. The car had struck several things after being told to stop. The car was moving a third time against the officer's explicit instructions. It does not take a half a second to accelerate faster. The Fourth Amendment did not require my officers to wait until she hit the accelerator harder. Had she done that, they would be dead. They would have hit this path. If individuals had been back there, she would have run over them. If they'd been back? Correct. And that's where we afford officers a 2020 hindsight. Because you can always go back and find, almost in every shooting that I've ever looked at, you can always find something. You can always say, well, maybe he wouldn't have pulled the gun out. Maybe the gun was fake. Or maybe he was trying to give the gun up. Or maybe the gun didn't have any bullets in it. There's always something. Quick question on law of the case. In spite of my testing you on all this, is the panel majority's original decision conclusive of any of this? Or do you agree it was back before us after sort of reassessment on remand? Well, I believe on law of the case that the factual assessment is the law of the case. Because this court has assessed the facts of the case and then applied the law to it and found that there was no clearly established law. That's the only law of the case. Given the facts in the record, the officer's conduct didn't violate clearly established law. That's what the law of the case is? Correct. There was no finding that this wasn't a constitutional violation? That's correct. There was no finding of that. The issue of, to switch gears of how that applies here, on the Bastios issue, the appellant cite Wisner. If you look up Wisner, that issue was not before the court. And in fact, the county in their briefing, Which issue? The Bastios, whether qualified immunity negates. Does finding clearly established law negate a finding of deliberate indifference under Monell failure to train? Correct, Your Honor. So in that case, the county brief was, in that case, had about a paragraph that just said, hey look, district court was right. There's no constitutional violation. Therefore, county's out. That was it. I mean, even assuming Windsor somehow conflicts with Bastios, Bastios is before Windsor. That is correct. And the language of Bastios, I think, touches on one of the key elements that Monell is supposed to speak to, which is deliberate indifference. A municipality makes constant decisions about where to devote resources in training, supervision, and oversight. In that process, they have to make assessments of what is the likelihood of an outcome of this program of training, supervision, and discipline. How is it that they can be deliberately indifferent on a constitutional matter when learned jurists on this court and others in the academies and the commentariat are divided? We can have, in this case, by this court, a 9 to 8 decision that, for example, the shooting was now unconstitutional. So are we to retroactively apply that? That's what Monell is. Are we to retroactively apply that and say, you guys should have known this was going to happen? My DPD chief, sheriffs are intelligent people, but they don't have a crystal ball. And so when you're talking about devoting resources to these things, we cannot expect these policymakers or executives of departments to be able to foresee, we need to plan against this exact same thing happening. But didn't the district court also say when they did foresee it, when they have department policies that prohibit something, those are irrelevant to deliberate indifference? Is that a correct statement of law? So there is some weird, it can't be you win either way. You don't have to foresee it, but if you do foresee it, it's irrelevant if they violate that policy. So again, I believe that, as we tried to make clear in our briefing, the internal rules of the DPD are not official policy. However, to the extent that we now look to regulations, you're doing three things that a court would be doing unintentionally. Number one, you're federalizing internal rules that are developed by police officers and sheriffs. No, I'm just responding to your statement. They don't have to foresee it. Well, when they did foresee it, is the district court right to say that doesn't inform our assessment of DI? If they did foresee it. If they did foresee it, they had a department policy, which is you better activate emergency lights so that someone can wake up rather than be startled, and then you shoot them. I think that sort of goose gander circumstances, whatever our internal rules are, are not relevant to the Fourth Amendment. OK. Because number one, they're written by sheriffs and police officers. And to federalize those internal decisions would secondly create a patchwork of constitutional rights. The city of Dallas trains our officers for 40 weeks in our academy. The TCOL, Texas Commission on Law Enforcement, requires 22 weeks. TCOL requires 750 hours of training. We require 1,400 hours. Our general orders book is so big, you could serve coffee on it. You can always go in and find some rule somewhere that either an officer violated or that we should have had a slightly better one on that. And if you look at, for example, in our training, our use of force rules say you cannot, as an officer, get in front of a car with a deadly weapon in order to stop that car. Because that would almost surely bring about a deadly force situation. So we tell them preemptively, don't do that. You can't create the exigency. So it's a, yes, state created danger thing. We're trying to eliminate that. State created danger is not a feature of this court's jurisprudence. We train our officers on a philosophy called cover plus distance equals time. If you get into a dangerous situation, cover. Make yourself safe. Get a distance. Get away from them. In three, time. That gives you a chance to figure out what to do. That gives you a chance to call for backup. That gives the suspect time to cool off. We drill these into these guys and ladies all the time, under use of force. That is irrelevant to the Fourth Amendment. If an officer violates that protocol, whether standing in front of the car or time plus distance equals, or distance plus cover equals time, if that happens in Dallas, how is that a Fourth Amendment violation, whereas in Arlington, they don't train on any of that? So when we have also, to the extent that we're now applying internal rules, we are disincentivizing municipalities from creating something higher than the constitutional floor. My example of our admonition officers to not stand in front of a moving vehicle, we want them to do that, because that's safer for everybody. But that's not the Fourth Amendment. And so if you're, in essence, telling policymakers and also executives who do the training, look, you're buying your officers' liability. If you put in these extra protections, when you put in these extra provisions, you're giving a hook for liability for down the road. With the brief period of time that I have left, the Fourth Amendment issue is largely the facts have been established in this case. As far as the appellants in their briefing did not address the Solis factor of speed to force our officers in the circumstance at issue here gave Ms. Dawes multiple opportunities to cease doing what she was doing. The subjective question of what my officers were thinking, whether they were good people or bad people, has nothing to do with this. So were her subjective manifestations. If she were simply backing up because she were confused, or if she were backing up because she was getting ready to hit one of my officers, we'll never know. So whether or not she was confused, we don't know. Whether she was trying to get away, we don't know. But the question comes down to, objectively, what happened. And in that circumstance, viewed in a vacuum, a car backing up two, three miles an hour is not that big of a deal. However, put in the proper context, then it becomes one. And we don't want officers to have to make a decision of, well, let's see, she's only going two or three miles an hour. If she moves back five, 10, now I can shoot at her. Well, at that point, if there is an officer behind there, that person's dead. And so for these reasons, we would ask the court to affirm both on the Bastillos issue and on the Fourth Amendment. Thank you. Thank you, Counsel. Anybody want to argue on that? Thank you, Your Honor. First, I want to correct. I know I cited to Atkinson and Horton. Atkinson's, I think, probably is not the better case. I think Horton is the better case. Specifically, there is a practice and policy that is a jail suicide case where they said you have a pattern and practice of not properly monitoring suicide risk patients. Atkinson was a- If you have a pattern and practice in court, when I look it up, it will be that replaced clearly established law. It didn't have to be clearly established law for the municipality. I'm sorry. I don't understand that question. I think what you're suggesting, you're saying the case you said was your strongest out-of-circuit case to rebut Bastillos as Atkins. And good for you. You're standing up saying, no, it isn't. I'm saying Horton is, yes. You're saying court is. And therefore, I just want to confirm when I look it up, that will be a case where a municipality is on notice, sufficient to infer deliberate indifference by a pattern, even though there was no clearly established right. Yes. That's what it's going to say. Yes. Horton comes down on there is no clearly established right in terms of what the constitutional violation was, but that we still look at the Monnell claim because they are talking about a pattern and practice of not properly monitoring suicide risk patients. The next thing I want to talk about is the other thing I want to talk about is the policy, the officer training policy. First, I want to reiterate, I know that he talked about the city of Dallas, their training policies, things like that, the number of hours that they train. You'll notice that his brief does not have a record site to that because we do not have discovery on that. That is not a position we have gotten to in this case We haven't gotten that far. And it may very well be that we reach this case on a proper summary judgment with evidence. And the court says, you're right. There is no history of a pattern or practice of training violation. We've looked at the training policies and you didn't meet the bar. But that's not where we're at now. We haven't gotten that far. All we've gotten to is just if there is no constitutional violation, then there is no Monnell violation. And so the actual training policy is not really properly before this court. The second thing I want to talk about in that is to the extent that the city is arguing that when you've got a policy in place that is more extensive, that might expose you to liability if you look at that in the constitutional analysis. I don't think that's the case. It is not red letter law that if you have a policy in place and someone violates it, it is a constitutional violation. That is not what we are saying. That's not what the law says. But the courts have consistently said, if you've got a policy in place and an officer violates it, it is relevant to our constitutional violation analysis. You are supposed to write policies that comply with the Constitution. And if someone violated a policy that we assume complies with the Constitution, then we should look at whether there's a constitutional violation. That's just the logic of that analysis. And so I don't think it follows that cities or departments will stop writing policy that is more in-depth or more extensive because people might violate the policy, and then we will look at that as a constitutional violation issue. I think it's actually the opposite, that the more in-depth the policies are, the better it is across the board. Because on the opposite side, you have monel liability, and you need to have in-depth policies and in-depth training about these issues in order for us as courts to be able to look, excuse me, at these issues on monel and determine whether or not the policy is proper, whether or not it encompasses all the potential constitutional violations. Monel says, cities, when we look at your municipal liability, when we hold you strictly liable, it is because you have the benefit of time, and because you are supposed to sit in a group all together and discuss the pros and cons and make policy determinations. And then you have to bear the consequences of those policy determinations. This is not split-second decision making. The reason we give officers qualified immunity is because there is a level of training. At some point, they are going to sit there in a very dangerous situation and have to make a split-second decision about what they want to do. And so there needs to be extensive training behind them that their natural instinct is the appropriate one. But if they are acting in good faith, and they happen to make a mistake, we don't hold them liable. The city doesn't have that same consideration. The city has all the time in the world to think about these policies. And Owen says, we hold them responsible for the decisions that they make. I think, at the end of the day, the one thing that I think. Well, I mean, the difficulty, I think, comes with if the theory of municipal liability is not a policy, but the policy of failing to train. Because then you have to link the policy of failing to train with the anticipated outcome has to be a constitutional violation, right? Well, yes. But I think that Monnell speaks to that specifically, that we expect policymakers to consider future consequences. And when we look at failure to train. Yeah, but the Supreme Court, I mean, I've got some background in this. The Supreme Court does say that when you get to the failure to train, it's the most difficult claim to make to connect a policy with the constitutional violation. Yes, I agree. It's just on the spectrum. Yes. But that's all. No. And just to close, I think the one thing I want to talk about with Owen is that when Owen talks about where fairness matters and where we allocate the kind of ultimate burden, when the issue is fairness to the citizen versus fairness to the municipality, the citizen always wins. The Constitution is meant to protect the citizen, not to protect the municipality. And if we harm the citizen to the benefit of the municipality, that honestly defeats the purpose of government. So thank you very much. Thank you, counsel. Thank you both. That case is submitted. Shall we do our last one?